UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-60443-RUIZ/STRAUSS

**GALE LOVETT,**

    Plaintiff,

v.

**KILOLO KIJAKAZI,**
Acting Commissioner of Social Security,

    Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment/Initial Brief ("Plaintiff's Motion") [DE 22] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 24]. I have reviewed both motions, Plaintiff's Reply Brief [DE 28], the administrative record [DE 7], and all other filings in this case. For the reasons discussed herein, Plaintiff's Motion [DE 22] is **DENIED** and Defendant's Motion [DE 24] is **GRANTED**.

### I.    BACKGROUND & PROCEDURAL HISTORY

Plaintiff applied for both disability insurance benefits ("DIB") and supplemental security income ("SSI") on August 20, 2020, alleging a disability onset date of December 21, 2019 ("Alleged Onset Date"). Tr. 18, 229–41, 260–70. Plaintiff was born in 1960 and was 59 years old on the Alleged Onset Date. Her DIB and SSI claims were denied initially and upon reconsideration. Tr. 18, 180–92, 197–204. Thereafter, Plaintiff requested a hearing pursuant to 20 C.F.R. §§ 404.929 and 416.1429 which occurred on September 2, 2022, before an Administrative Law Judge ("ALJ"). Tr. 35–53, 156. Plaintiff appeared telephonically with

1

counsel. Tr. 37–38. At the hearing, only Plaintiff and a vocational expert ("VE") provided testimony. Tr. 39, 47. The ALJ issued her decision on September 30, 2022, finding Plaintiff not disabled under the Social Security Act from the Alleged Onset Date through the date of the ALJ's decision. Tr. 15–28. On January 26, 2023, the Appeals Council denied Plaintiff's request for review, thereby leaving the ALJ's conclusion as the final decision of the Commissioner. Plaintiff subsequently filed this action seeking judicial review of the Commissioner's verdict. [DE 1].

## II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Courts "may not decide facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Id.* (second alteration in original) (quoting *Phillips*, 357 F.3d at 1240 n.8; *Bloodsworth*, 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III. DISCUSSION

### A. THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262–63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)); *see also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. §§ 404.1520 and 416.920. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If

so, the ALJ will find the claimant disabled without considering age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This determination takes into account "all of the relevant medical and other evidence," including the claimant's testimony and the observations of others. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five. "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale*, 831 F.2d at 1011). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.* At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. *See* 20 C.F.R. pt. 404, subpt. P, app. 2. The guidelines may apply "where a person is

not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. §§ 404.1569, 416.969. The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule." 20 C.F.R. §§ 404.1569, 416.969. Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (alterations in original) (citation omitted); *see also Walker*, 826 F.2d at 1002–03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC. *Hargis*, 945 F.2d at 1490. However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003). A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

### B. ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found Plaintiff not disabled between the Alleged Onset Date and the date of the ALJ's decision. *See* Tr. 18–28. Initially, the ALJ addressed certain preliminary issues and outlined in detail the five steps of the sequential evaluation. Tr. 18–20.

Then, addressing the first step in the sequential evaluation, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since the Alleged Onset Date.  Tr. 20.

At step two, the ALJ found Plaintiff had the severe impairment of left sacroiliac joint dysfunction and lumbar facet degenerative changes.  Tr. 21.  The ALJ also discussed nonsevere impairments at step two, including Plaintiff's mental impairments, which the ALJ found were nonsevere.  Tr. 22–24.  As to Plaintiff's mental impairments, the ALJ determined, at step two, that Plaintiff's "medically determinable mental impairments of major depressive disorder, anxiety disorder, and remote history of substance use disorder, considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere."  Tr. 22.  The ALJ further stated, "[Plaintiff's] mental symptoms were exacerbated by family stressors, but her symptoms have been stable with treatment.  [Plaintiff] has not been hospitalized for her mental impairments.  The claimant's mental impairments are nonsevere."  Tr. 23.  The ALJ noted that she considered the "paragraph B" criteria – the four broad areas of mental functioning – in making the foregoing finding.  Tr. 23.  She assessed a "mild" limitation in all four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  Tr. 23.  In coming to this conclusion, the ALJ cited to Plaintiff's mental and consultative exams as well as Plaintiff's testimony.  Tr. 23.

Next, at step three, the ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 24.

While conducting step four of the analysis, the ALJ assessed Plaintiff's RFC, determining based on her consideration of the entire record that Plaintiff has the RFC to perform "light work

as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except the individual can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; can tolerate occasional exposure to extreme heat, vibrating surfaces and tools, and to workplace hazards." Tr. 27. After assessing Plaintiff's RFC, the ALJ found Plaintiff could perform her past relevant work as a cashier and plastic roll cutter. Tr. 27. As a result, the ALJ concluded Plaintiff was not disabled and did not proceed to step five. Tr. 27–28.

### C. ANALYSIS

In her motion, Plaintiff raises two arguments. First, Plaintiff contends the ALJ erred by failing to apply the correct legal standards to Plaintiff's need for an assistive device. Second, Plaintiff argues the ALJ erred by failing to apply the correct legal standards to Plaintiff's mental health impairments. For the reasons that follow, neither contention merits remand.

#### 1. Assistive Device

Plaintiff fails to establish error in the ALJ's RFC assessment regarding Plaintiff's alleged requirement of an assistive device – a cane – for ambulation. In evaluating Plaintiff's need for a cane, the ALJ did not substitute her opinion for that of a medical expert. Rather, she weighed various sources of evidence and evaluated differing medical opinions, choosing to weigh one opinion more than others based on substantial evidence and promulgated a detailed decision on the matter. Tr. 29–32.

Plaintiff filed her claim after March 27, 2017, and as a result, review of her claim is governed by 20 C.F.R. §§ 404.1520c(a). Thus, the ALJ was not to "defer or give any specific evidentiary weight, including controlling weight," to any medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x

495, 498 (11th Cir. 2021) (noting the requirement to assign weight to medical opinions has been omitted from the revised regulation). Instead, the ALJ was required to evaluate the persuasiveness of medical opinions and prior administrative medical findings based upon five factors: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) 'other factors that tend to support or contradict' the opinion" or finding. *Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)-(5)). Supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Although an ALJ is no longer required to provide a specific weight to medical opinions – a requirement under the prior regulation, *see* 20 C.F.R. §§ 404.1527, 416.927, – the ALJ still needs to articulate how persuasive the ALJ finds medical opinions and prior administrative medical findings to be. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

      The ALJ must explain how they considered the factors of supportability and consistency, but the ALJ is generally not required to explain how they considered the other three factors. 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3). Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, the medical and prior administrative medical findings evidence consisted of findings by Dr. John Catano, Dr. Alireza Shams[1], Dr. Wilfredo Fernandez, and the prior administrative medical findings of the state agency medical consultants at the initial and reconsideration levels. *See* Tr. 58–79, 122–53, 397–98, 627–32, 1350–51.

While formulating Plaintiff's RFC, the ALJ first summarized the medical opinions in the record. Dr. Shams' examination report noted Plaintiff had full strength in her extremities and normal range of motion in her extremities. Tr. 397–98. Plaintiff's supine and seated straight leg tests were positive bilaterally at 0 degrees due to her back pain. Dr. Shams noted that Plaintiff declined to do heel and toe walking because of pain, was able to get on and off the exam table, and her gait was antalgic. Tr. 398. Plaintiff declared that she could not stand for more than 5 minutes straight and could not walk for more than 100 feet without interruption according to her. Tr. 398. Dr. Shams further observed that Plaintiff was using a cane that was prescribed as an assistive device due to major risk factors for falls, and Plaintiff declined to walk in the room without the use of the device. Tr. 398. Dr. Shams reasoned that the cane is a medical necessity for short and long-distance walking. Tr. 398.

Dr. Fernandez's examination's notes stated Plaintiff was using an ambulation device – a cane – but that it was not medically necessary during the exam. Tr. 1350. Additionally, Dr. Fernandez's medical source statement concluded:

> [Plaintiff] has the ability to perform activities involving sitting, standing, walking, lifting, carrying and handling objects, moving about, hearing, seeing, speaking and traveling. Physical examination was within normal limits. [Plaintiff] denied any symptoms of chest pain. Orthopedic examination was within normal limits for age and condition.

---

[1] The ALJ mistakenly attributed Dr. Shams' evaluation to Dr. Marie Adams, whose unsigned signature block was at the bottom of the report above Dr. Shams' signed signature block. Tr. 399.

9

> At this time, I see no gross limits to [plaintiff's] activities. [Plaintiff] can lift, push, pull; they can bend, stoop, squat, kneel, crawl and crouch if needed. [Plaintiff] can climb stools/small ladders, if needed, and walk up and down steps with rails. Normal gait and station without evidence of gross motor dysfunction, sensory loss or reflex abnormality for age was appreciated.

Tr. 1351.

Last, the ALJ reviewed the state agency medical consultants at both levels of review. Tr. 26. The ALJ noted that the medical consultants opined that Plaintiff was limited to medium work, her mental impairments were nonsevere, and Plaintiff could perform her past relevant work. Tr. 26, 67, 78, 136, 152.

Plaintiff does not dispute that the ALJ addressed the relevant facts mandated in 20 C.F.R. §§ 404.1520c, 416.920c. Instead, Plaintiff contends that in rejecting her assertion that a cane is necessary, the ALJ improperly substituted her opinion for that of a medical expert. [DE 22 at 7]. In support of this position, Plaintiff relies on several cases predating the 2017 rule change which removed the requirement that an ALJ provide more weight to medical opinions from treating physicians. *Compare* 20 C.F.R. §§ 404.1520c, 416.920c, *with* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The ALJ is tasked with examining and weighing the evidence before them. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996). There is no requirement for the ALJ "to discuss every piece of evidence so long as his decision demonstrates that he considered the record as a whole." *Urena v. Kijakazi*, No. 22-21723-CIV, 2023 WL 5611905, at *19 (S.D. Fla. July 28, 2023), *report and recommendation adopted,* 2023 WL 5608809 (S.D. Fla. Aug. 30, 2023). In this instance, the ALJ did not disregard all medical opinions and formulate her own opinion on the matter. On the contrary, the ALJ evaluated the medical reports of Dr. Catano, Dr. Shams, Dr. Fernandez, and the prior administrative medical findings of the state

10

agency medical consultants at the initial and reconsideration levels before determining it was not medically necessary for Plaintiff to use her cane.

In coming to this conclusion, the ALJ found the opinions of the state agency medical consultants and Dr. Fernandez's report more persuasive than Dr. Shams' report when analyzed against the objective medical evidence. The ALJ found that Dr. Shams' opinions that Plaintiff could not stand for more than five minutes, and that use of a cane was medically necessary, unpersuasive because they were inconsistent with and not supported by the objective medical evidence. Tr. 26-27. Specifically, the ALJ found that Dr. Shams' opinions appeared to be solely based on Plaintiff's own assertions to Dr. Shams rather than Dr. Shams' own observations after conducting an examination. *Id*. The ALJ further observed that these opinions were unsupported by Dr. Shams' examination, which found that Plaintiff had full strength and normal range of motion in her extremities.[2] Conversely, the ALJ viewed Dr. Fernandez's opinion that Plaintiff's use of a cane was not medically necessary to be persuasive[3] because it was consistent with and supported by objective evidence that Plaintiff had full strength in her extremities. Tr. 27, 1351. Moreover, Dr. Fernandez's assessment was more consistent with, and supported, the objective medical evidence which indicated Plaintiff had normal gait one month prior to requesting a cane.

---

[2] Plaintiff's prior physician, Dr. Berges, prescribed her a cane because Plaintiff stated her previous physician prescribed one for her, but she lost it. Tr. 735–37. Despite Plaintiff's assertions in her Motion, Dr. Berges did not opine as to whether the can was medically necessary.

[3] The ALJ described Dr. Fernandez's overall opinion to be "partially persuasive" because he opined that Plaintiff had "no gross limits," which the ALJ found inconsistent with objective medical evidence indicating some limitations. Tr. 27. Although the ALJ did not discuss Dr. John Catano's report in depth because he did not provide an opinion on Plaintiff's functional limitations, the ALJ does state she considered the medical opinions. Tr. 24–26. In Dr. Catano's report, he noted that Plaintiff's ambulation was mildly antalgic, Plaintiff did not use any ambulatory assisting device, and she could get on and off the examining table by herself with some difficulty. Tr. 629. These observations are mostly consistent with Dr. Fernandez's assessment.

11

Tr. 27, 746, 1351; *see* 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  Therefore, the ALJ did not merely substitute her medical opinion for that of a medical expert.  Rather she evaluated the supportability and consistency of the various medical opinions and made a determination regarding the persuasiveness of those opinions concerning Plaintiff's need for a cane based on substantial evidence.

Plaintiff further insists the ALJ erred in assessing Dr. Fernandez's opinion regarding Plaintiff's use of a cane by not resolving internal inconsistencies in his report.  Plaintiff asserts there were internal inconsistencies in Dr. Fernandez's report because the report noted that Plaintiff used a cane to walk, Tr. 1349, but then stated, "Claimant is independent and does not use a prescribed medical assistive device for ambulation."  Tr. 1350.  Thus, Plaintiff argues that 20 C.F.R. §§ 404.1519p(b), 416.919p(b) required the ALJ to contact Dr. Fernandez to ask him to furnish missing information or prepare a revised report for the ALJ.  Plaintiff concedes the administrative record contains a Report of Contact form dated April 13, 2021, in which an individual by the name of Roxana M. Gregg reported that she contacted Dr. Fernandez, who clarified Plaintiff would not need an assisted device for normal day-to-day ambulation and opined that Plaintiff uses the assisted device for peace of mind and comfort rather than out of necessity. [DE 22 at 8].  Yet Plaintiff argues there is no indication of the credentials of Ms. Gregg and questions the veracity of her notation, given that Ms. Gregg's contact did not yield a supplemental report from Dr. Fernandez and the ALJ did not discuss the Report of Contact.  [DE 22 at 8].

Plaintiff does not provide any authority suggesting this alleged error requires reversal, and this Court – after conducting its own independent research – could not find any such authority.  Notably, even assuming the statements in Dr. Fernandez's report to which Plaintiff refers make the report "internally inconsistent" (as referred to in 20 C.F.R. § 404.1519p(a)(2)), it is unclear

12

whether that internal inconsistency renders the report "inadequate or incomplete" under 20 C.F.R. § 404.1519p(b). Even if it does trigger 20 C.F.R. § 404.1519p(b), that section simply requires the Commissioner to "ask that the medical source furnish the missing information *or* prepare a revised report." *Id*. (emphasis added). Plaintiff provides no authority to suggest that the Commissioner was required to obtain a "revised report" (as opposed to asking for further information) nor authority indicating that the Report of Contact from Ms. Gregg was insufficient to satisfy whatever obligation the Commissioner had. Regardless, the failure to include the credentials of Ms. Gregg or explicitly discuss the clarification from the Report of Contact appear to fall within the scope of harmless error, particularly given the substantial evidence with which the ALJ supported her conclusions. *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1008 (11th Cir. 2020) ("[W]e apply harmless-error review to social security cases.").

In short, the ALJ's decision not to consider Plaintiff's claimed need for a cane to perform everyday functions in assessing Plaintiff's RFC was not error because the evidence before the ALJ established that a cane for everyday function was not medically necessary. Tr. 26–27. The objective medical evidence and opinions from several consultants buttress this conclusion. Tr. 58–79, 114, 122–53, 628–29, 746, 1351. Accordingly, substantial evidence supports the ALJ's evaluation, and this Court imputes no error into the decision.

### 2. Mental Health Impairments

Plaintiff fails to establish error in the ALJ's finding that Plaintiff's mental health impairments were nonsevere or in the ALJ's decision to not incorporate limitations based on Plaintiff's alleged mental impairments within her RFC. In assessing Plaintiff's mental impairments, the ALJ evaluated the paragraph B criteria in connection with steps two and three of the sequential evaluation and conducted a more detailed assessment of the relevant evidence

13

regarding Plaintiff's mental impairments. *See* Tr. 24 (recognizing mental RFC assessment requires a more detailed assessment than the paragraph B criteria evaluation at steps two and three); *see also Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) ("The ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis; it is distinct from the more detailed inquiry as to a claimant's RFC at step four."). This evidence included relevant opinion evidence and prior administrative medical findings, other medical evidence, and Plaintiff's testimony. Tr. 22–24.

As indicated above, an ALJ must consider the medical severity of a claimant's impairments at step two of the sequential evaluation. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1264–65 (11th Cir. 2019). But step two only involves a "threshold" inquiry. *Id.* at 1265. It simply "'acts as a filter' to weed out claims where there are no severe impairments at all." *Bullard v. Comm'r, Soc. Sec. Admin.*, 752 F. App'x 753, 755 (11th Cir. 2018) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). Here, because the ALJ found severe impairments at step two – albeit no severe mental impairments – she did not "weed out" Plaintiff's claims at step two. Rather, the ALJ denied Plaintiff's claims at step four.

At step two, the ALJ determined Plaintiff's "medically determinable mental impairments of major depressive disorder, anxiety disorder, and remote history of substance use disorder, considered singly and in combination, do not cause more than minimal limitation in her ability to perform basic mental work activities and are therefore nonsevere." Tr. 22. To arrive at this conclusion, the ALJ considered the four broad functional areas – the paragraph B criteria. *See Buckwalter*, 5 F.4th at 1324 ("In evaluating the severity of a claimant's mental impairment at steps two and three of the sequential analysis, the ALJ makes determinations as to the claimant's abilities in four broad functional areas known as 'Paragraph B' criteria."). "The four areas consider the

claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself." *Id.* at 1324–25; *see also* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). "The ALJ must assign a rating of none, mild, moderate, marked, or extreme to a claimant's limitation in each area of functioning." *Buckwalter*, 5 F.4th at 1325; *see also* 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). In this case, the ALJ assigned a "mild" rating in all four areas. Tr. 23. Because the ALJ found Plaintiff's medically determinable mental impairments caused no more than a "'mild' limitation in any of the functional areas <u>and</u> the evidence [did] not otherwise indicate that there [was] more than a minimal limitation in the [Plaintiff's] ability to do basic work activities," the ALJ held they were nonsevere. Tr. 23.

While considering Plaintiff's mental limitations, the ALJ viewed and discussed the relevant medical opinions in accordance with the applicable regulations. Tr. 22–24. Plaintiff first sought treatment for depression and other mental ailments in November 2019. Tr. 1903. Several doctors, nurses, and licensed mental health counselors examined and made behavioral health progress notes regarding Plaintiff's mental health. Tr. 1862–1968. These notes indicated Plaintiff was generally well-groomed, well-dressed, cooperative, fully oriented, had good eye contact, responded to when spoken to, and had either adequate concentration or mildly to moderately impaired concentration. Tr. 1893, 1896, 1899, 1903, 1922–35.

Despite alleging she was experiencing auditory hallucinations, insomnia, and depression, Plaintiff's behavioral notes show her mental health improving and stabilizing the more she continued with therapy. Tr. 1922–35. The evidence corroborates the ALJ's assessment that the death of Plaintiff's father caused Plaintiff to experience further depression. Tr. 22, 367–72. Concomitantly, the behavioral notes taken during this time establish Plaintiff continued with therapy and her overall limitations were mild. For example, one month after confiding in the

15

therapist the grief she felt over Father's Day Weekend, Plaintiff was in a euthymic mood, her speech was normal, and had appropriate thought process. Tr. 369. Plaintiff's abilities stayed generally consistent – with slight deviations in mood – from this time to around March and April 2022. *See* Tr. 384–89, 1928–31. For a short period between March and April 2022, Plaintiff experienced insomnia and more auditory hallucinations due to family stressors. Tr. 1928–31. Nevertheless, Plaintiff displayed appropriate thought process, normal speech, eye contact, and mostly had no impairment to memory. Tr. 1928–31.

As mentioned earlier, the ALJ assigned a "mild" limitation to the paragraph B criteria. Tr. 23. Plaintiff claims she experiences memory loss, has difficulties getting along with others, and has difficulties with concentration. The evidence, as the ALJ summarized, paints a different picture. Plaintiff's mental health status exams state she has very little (if any) impairment in memory. Tr. 1922–35, 1958–61. She was "cooperative" at most (if not all) of her consultative exams and with her treating medical providers. Tr. 364–64, 367, 384. Besides very few sessions (out of many), Plaintiff did not display difficulties with concentration. Tr. 384–89. Notwithstanding the foregoing, Plaintiff does draw this Court's attention to numerous record cites alleging the evidence supports the conclusion that Plaintiff suffers from severe mental impairments. [DE at 10–11]. However, "[u]nder a substantial evidence standard of review, [Plaintiff] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). Here, Plaintiff has failed to "show the absence of substantial evidence supporting the ALJ's conclusion." Therefore, based on the objective medical evidence, a mild limitation designation on each of the Paragraph B criteria, a finding that Plaintiff's mental impairments cause no more than a minimal limitation on Plaintiff's ability to do

16

basic work activities, and a finding that Plaintiff's mental impairments are nonsevere, were appropriate.

Plaintiff cites to *Schink* to support her contention that the ALJ erred by classifying her mental impairments as nonsevere and failing to assess them in Plaintiff's RFC at step four. Even if the ALJ improperly classified Plaintiff's mental impairments as nonsevere – which she did not – the alleged error is harmless. As the Eleventh Circuit explained in *Schink*, the incorrect finding of severity "could be harmless if the ALJ nevertheless proceeded in the sequential evaluation, duly considered [claimant's] mental impairment when assessing his RFC[] and reached conclusions about [claimant's] mental capabilities supported by substantial evidence." *Schink*, 935 F.3d at 1268. Here, the ALJ proceeded to the step four analysis and considered "all symptoms." Tr. 24.[4]

The ALJ also did not err at step four by not incorporating mental limitations in Plaintiff's RFC. Persuasive precedent illustrates that an ALJ is not required to include mental limitations in her RFC assessment following a finding of "mild" mental limitations while evaluating the paragraph B criteria. *See Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979–80 (11th Cir. 2016); *see also Hartz v. Comm'r of Soc. Sec.*, No. 21-CV-14418, 2023 WL 3871799, at *3 (S.D. Fla. May 17, 2023), *report and recommendation adopted,* 2023 WL 3868200 (S.D. Fla. June 7, 2023) ("ALJs are not obligated to include mental limitations in the RFC merely because they have found 'mild' limitations under the PRFT and paragraph B criteria."); *Bryant v. Comm'r of Soc. Sec.*, No.

---

[4] Without explicitly arguing it, Plaintiff appears to allege the ALJ erred at step three as well by failing to consider her mental impairments. However, the ALJ found Plaintiff suffered a "mild" limitation in all four broad functional areas thereby precluding Plaintiff's mental impairments from meeting a listing at step three. *See Estes v. Comm'r of Soc. Sec.*, No. 2:20-CV-225-JLB-NPM, 2021 WL 4822599, at *9 (M.D. Fla. Aug. 2, 2021), *report and recommendation adopted,* 2021 WL 3910134 (M.D. Fla. Sept. 1, 2021) ("To meet a listing, a claimant must have a mental impairment that results in at least one extreme or two marked limitations in the four broad areas of mental functioning.")

2:20-CV-294-JLB-NPM, 2021 WL 4067464, at *11 (M.D. Fla. July 29, 2021), *report and recommendation adopted,* 2021 WL 3855941 (M.D. Fla. Aug. 30, 2021) (holding "ALJ did not err in failing to include additional limitations in the RFC related to [claimant's] depression, anxiety, bipolar disorder, or insomnia" after determining these mental limitations were nonsevere). This does not, however, relieve ALJs of the obligation to consider all relevant evidence, all impairments (both severe and non-severe), and a claimant's condition as a whole when assessing a claimant's RFC. *See Buckwalter*, 5 F.4th at 1320; *Schink*, 935 F.3d at 1268-69. But here, the ALJ's decision supports the conclusion that she fulfilled that obligation.

It is true that the ALJ purely stating she considered "all symptoms" is not dispositive of whether the ALJ did in fact consider the necessary symptoms. Instead, one must look to the content of the ALJ's decision. *See Schink*, 935 F.3d at 1269. While discussing Plaintiff's RFC, the ALJ listed Plaintiff's alleged symptoms which included "back pain, knee pain, shoulder pain, joint pain, chest pain, limited mobility, weakness, lightheadedness, fatigue, depression, mood swings, anxiety attacks, memory loss, and auditory hallucinations." Tr. 25. Though not the model of clarity, when scrutinizing Plaintiff's statements about the intensity, persistence, and limiting effects of her alleged physical and mental impairments, the ALJ lumped these impairments all together with the word "symptoms." Tr. 26. Subsequently, the ALJ noted Plaintiff's statements regarding these symptoms are inconsistent with the objective medical evidence because the evidence indicated the symptoms – which, according to the ALJ's list, stem from Plaintiff's physical and mental impairments – stabilized with routine follow-up exams and medication. Tr. 26. The ALJ then explained the persuasiveness of the state agency medical consultants' opinions noting Plaintiff's "mental symptoms improved stabilized (sic) as she processed the grief from losing her father. She has not been hospitalized for a mental impairment." Tr. 26. This analysis

sufficiently shows that the ALJ considered Plaintiff's mental impairment symptoms while assessing Plaintiff's RFC and satisfies the requirements of assessing Plaintiff's RFC by evaluating all the relevant medical and other evidence as set forth in 20 C.F.R. §§ 404.1545, 416.945. *Castro v. Kijakazi*, No. 22-CV-21057, 2023 WL 3819947, at *9-11 (S.D. Fla. May 19, 2023), *report and recommendation adopted,* 2023 WL 3816710 (S.D. Fla. June 5, 2023).

Plaintiff further argues that the ALJ's use of the phrase "stable" when describing Plaintiff's mental health is improper because stable could mean "stable at a low functional level." *Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008); *see also* [DE 22 at 12]. This is only a narrow reading of the ALJ's summation. While discussing Plaintiff's RFC, the ALJ stated "[Plaintiff's] mental symptoms improved stabilized (sic) as she processed the grief from losing her father." Tr. 26. The ALJ did not merely find that Plaintiff's mental limitations "stabilized," but rather, found her conditions improved and stabilized[5] which is consistent with the objective medical evidence. Thus, the ALJ applied the correct legal standards and made findings supported by substantial evidence.

## IV.   CONCLUSION

For the reasons discussed above, it is **ORDERED and ADJUDGED** that Plaintiff's Motion [DE 22] is **DENIED** and Defendant's Motion [DE 24] is **GRANTED**. The Court will enter a separate Final Judgment **affirming** the final decision of the Commissioner.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 3rd day of November 2023.

Jared M. Strauss
United States Magistrate Judge

---

[5] Although the "and" does not appear in the ALJ's sentence, it is logical to conclude this was simply a scrivener's error.